UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO.: 1:20-CR-48-HAB |
| ) | |
| FREDERICK J. MORGAN ) | |
| a/k/a FREDRICK J. MORGAN, SR. ) | |

## AMENDED[1] OPINION AND ORDER

Who in the world is Erica Robinson? Oddly, in the pages of briefing delving into the validity of a search warrant in which her name appears, the Court has been left guessing. What has been revealed by the Government is the most innocent of explanations, to wit, the inclusion of her name in the warrant was a typographical error. Seizing on the Government's admitted mistake, Defendant Frederick Morgan, Sr. filed his Motion to Suppress Evidence (ECF No. 109) on March 25, 2021. Morgan Sr. asserts that the mistaken inclusion of Erica Robinson's name in the warrant invalidates the Magistrate Judge's finding of probable cause as to the search of his home for evidence of narcotics trafficking in violation of the Fourth Amendment. Likewise, he asserts that the warrant violates the Fourth Amendment's particularity requirement. He requests that the Court suppress all evidence discovered during that search. The Government filed its response in opposition on April 7, 2021, (ECF No. 113) to which Morgan replied on April 21, 2021 (ECF No. 117). For the following reasons, the Defendant's Motion will be DENIED.

## FACTUAL BACKGROUND

The Government indicted Defendant, Frederick J. Morgan, Sr. ("Morgan, Sr."), on three counts of a nineteen count, seven defendant indictment, alleging: one count of conspiracy to

---

[1] Ironically given the basis for the motion to suppress, this Opinion and Order is amended to remove a scrivener's error in the introductory paragraph. No substantive revisions have been made.

distribute and possess with intent to distribute various controlled substances, 21 U.S.C. § 846 (Count 1); and, two counts of distribution of 28 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Counts 4 and 18). The indictment followed from an extended investigation into the alleged drug conspiracy.

On August 25, 2020, Special Agent Sean Skender (SA Skender) with Alcohol, Tobacco, Firearms, and Explosives (ATF) sought and obtained a search warrant for Morgan Sr.'s home at 1933 Morgan Creek Drive, Fort Wayne, Indiana. *See* Case No. 1:20-MJ-73 (ECF No. 1). Officers executed the search warrant on August 27, 2020, the day following Morgan Sr.'s indictment in this case.[2]

The factual predicate for the warrant is found within the Application for Search Warrant (Application) in SA Skender's affidavit, to which the Court shall return momentarily. In addition to Skender's affidavit are two attachments, A and B, affixed to both the Application and to the Search and Seizure Warrant (Warrant) itself. (ECF Nos. 109-1 and 109-2). Both the Application and the Warrant are designated forms (AO 106 and AO 93, respectively) from the Administrative Office of the United States Courts intended to be used by law enforcement to obtain a warrant in cases such as this one. Both forms bear the signature of United States Magistrate Judge Susan Collins and are dated August 25, 2020. On the Application itself (AO 106), Magistrate Judge Collins attests that the application was "sworn to before me and signed in my presence." (ECF No. 109-2). SA Skender likewise signed the form as the applicant. The Application further contains a checked box noting that the Application is based on facts which continue "on the attached sheet." Although there are some rumblings in the briefing as to whether SA Skender's affidavit was, in

---

[2] The Government emphasizes that the Defendant was indicted prior to the search of his residence and based upon a series of controlled buys. Thus, in its view, the items seized from his residence, while further evidence of his commission of the crimes charged, were not the basis for his indictment.

fact, "an attached sheet" to the Application, a review of the docket from 1:20-MJ-73 puts those rumblings to rest as there is no question but that SA Skender's affidavit was part of the filings presented to and reviewed by the Magistrate.[3] If the docket entry was not enough to solidify this fact, Magistrate Judge Collins' signature is, as it appears at page 19 of the affidavit noting that the affidavit was "subscribed and sworn before me on this 25th day of August, 2020" (ECF No. 109-3 at 19).

So too, the Magistrate Judge's signature appears on the Warrant (AO 93). Affixed to the Warrant are the aforementioned attachments. "Attachment A" contains the description of the property to be searched while "Attachment B" identifies the property sought in the search. Morgan Sr. concedes that "Attachment A" is a valid description of the property to be searched, i.e., his residence at 1933 Morgan Creek Drive. As described more fully below, his quarrel is with "Attachment B."

Attachment B is lengthy; it contains three and a half pages of items sought by the Warrant. These include a laundry list of items typically used in the drug trade. Broadly speaking, the Warrant authorizes the search for controlled substances, firearms, ammunition, magazines, weighing scales, and U.S. Currency. More specifically, it identifies a number of categories of items to be seized: (1) any materials and/or equipment used, or intended to be used for counting, processing, or packaging of U.S. currency or controlled substances; (2) any papers or documents related, or

---

[3]The Government calls the assertion by the Defendant that SA Skender's affidavit was never presented to the Magistrate Judge "utterly ridiculous" (ECF No. 113 at 6), and, while this Court will not go quite that far, the allegation does strain credulity. *See United States v. Tylman,* No. 06-20023, 2007 WL 2669567, at *3 (C.D. Ill. Aug. 22, 2007) (finding in response to a similar assertion that "it would be nonsensical for the Government to have deliberately shuffled the files, as it would only serve to further complicate an already complex case and breed the kind of acrimonious allegations that the Court is now asked to resolve"). Defendant has provided no more than speculation that this occurred and does not at all address the Government's response that the Magistrate Judge attested to having been presented with the affidavit in the affidavit itself and in the Warrant.

3

tending to be related, to the sale of controlled substances; (3) documents related to the purchase, sale, leasing or ownership of any real estate, and any utility bills, mail, photographs or other evidence of home or business ownership or residency; (4) all cellular telephones, cellular telephone records, cellular telephone boxes, accessories such as chargers, directories of telephone numbers, and any information tending to establish the identity and role of the primary users of telephones and the identities and roles of the primary users of any telephones in contact with these telephones, to include any digital contact and directory information, photographs or videos, data or audio files, information pertaining to the call number or other identifying, stored text or other electronic messages and emails, Internet or other online search history and communications, calendar information, lists of incoming or outgoing calls, lists of missed calls, or any other information contained on cellular telephones for later forensic examination which relates to drug trafficking; (5) documents related to the purchase or sales or ownership of any motor vehicles; (6) bank records or similar financial records; (7) documents related to the mailing of packages to include receipts of shipments, receipt of delivery from all and any postal and delivery carriers. There appears to be no dispute between counsel as to these categories of items or whether they were supported by the Application and set forth with the particularity required under the Fourth Amendment.

That is, until the final paragraph of Attachment B. In that paragraph, for the first time, Erica Robinson's name appears. That paragraph reads, in relevant part:

> It is common in your Affiant's training and experience for persons dealing in drugs to use telephone communications and/or computers/tablets to conduct and coordinate illegal drug transactions. In general, cellular telephones contain a directory, a list of recent contacts, photographs or videos, saved text messages, or other information, which may provide evidence of Erica ROBINSON's drug transactions.

(ECF No. 109-1 at 6). The remainder of that paragraph elaborates on SA Skender's experience in drug investigations and his knowledge that evidence of drug trafficking and drug associates are

4

often discovered via information obtained from cellular telephones as well as other media devices such as hard drives, thumb drives or other storage media.

The Government's explanation for Erica Robinson's name appearing in Attachment B is simple – it either failed to edit the Attachment (i.e., a cutting and pasting error) or it erroneously attached the wrong Attachment B.[4] Either way, the Government concedes that the name was wrongly contained within Attachment B.

As referenced earlier, the Warrant was the product of the Application containing the affidavit of SA Skender. SA Skender's affidavit consists of 19 pages and incorporates Attachments A and B by specific reference. The affidavit outlines his vast experience in enforcing federal firearms and narcotics laws. Counsel agree that his credentials are impeccable and without disrepute. Pages 2 through 9 of the affidavit set forth SA Skender's experience and knowledge in the common practices of narcotics traffickers, including the types of records kept, contraband held, where and how contact information is stored, and the manner in which those items are utilized by such individuals. The remaining nine pages detail in scrupulous fashion the investigation of the Defendant and his son, Frederick Morgan, Jr. (Morgan, Jr.), as well as a series of controlled buys between two confidential informants (CIs) and Morgan, Jr.[5] Facts describing controlled buys nos. 3, 8, and 16 are set forth in the affidavit and are relevant to connect the Defendant's involvement

---

[4]The Government further explains that it submitted five separate Applications for Search Warrant to the Magistrate Judge on August 25, 2020, each seeking to search the residence of an individual named in Attachment B. The Government requests the Court take judicial notice of those separate applications presumably to demonstrate that the error was an honest mistake in this case and unintentional. Although the Defendant has taken some liberties with the record and, at times, suggested that the Magistrate Judge either was not presented with, or did not thoroughly read the various documents presented to her, the Court does not believe the Defendant to be arguing that the Government purposely included Erica Robinson's name to somehow mislead the Magistrate Judge or change the scope of the warrant it was seeking.

[5]There is no dispute before the court as to the reliability of either of the CIs. The focus of the suppression motion is solely the issue of whether Erica Robinson's name, mistakenly included in Attachment B of the Warrant and in the Application, invalidates the Magistrate Judge's finding of probable cause as to 1933 Morgan Creek Drive.

5

and his residence, 1933 Morgan Creek Drive, with narcotics trafficking activity. In the concluding paragraph SA Skenders avers:

> Based upon the foregoing information, your Affiant has probable cause to believe that Morgan Sr.'s property located at 1933 Morgan Creek Drive, Fort Wayne, Indiana and fully described in Attachment A, contains evidence of a crime; contraband, fruits of crime, or other items illegally possessed; and property designed for use, intended for use, or used in committing a crime, as listed in the application and Attachment B, and pertaining to violations of 21 U.S.C. §§841, 846 and 856, 18 U.S.C. §922(g)(1), and 18 U.S.C. §924(c).
> In consideration of the foregoing, your Affiant respectfully requests that this Court issue a search warrant for the premises located at 1933 Morgan Creek Drive, Fort Wayne, Indiana, further described in Attachment A, authorizing the search of the aforementioned for the items described in Attachment B.

(ECF No. 109-3 at 18).

Based on the above facts, Defendant's Motion to Suppress seeks suppression of the evidence seized during the search.

## DISCUSSION

This case implicates two distinct, but equally viable, tenets enshrined in Fourth Amendment jurisprudence. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" except, "upon probable cause." U.S. Const. Amend. IV; *Missouri v. McNeeley,* 569 U.S. 141, 148 (2013). Likewise, once probable cause, supported by "Oath or affirmation," is established, the Fourth Amendment requires the resulting warrant to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. These requirements, while both captured in the single sentence of the Fourth Amendment and often read in conjunction with one another, serve profoundly different purposes.

The "probable cause" requirement is grounded in the Framers' belief that freedom from government intrusion into one's home was a natural right fundamental to one's liberty. *See*

*Silverman v. United States,* 365 U.S. 505, 511 (1961) (citing *Entick v. Carrington*, 19 Howell's State Trials 1029, 1066) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."). For this reason, to justify such an intrusion, the Fourth Amendment requires "a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In turn, "[t]he particularity requirement 'ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *see also Marron v. United States*, 275 U.S. 192, 196 (1927) ("The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another."). With respect to the Warrant in this case, the Defendant argues both that the Warrant lacked probable cause and the particularity requirement is not met.

    The Defendant's principal argument is that no neutral and detached magistrate judge could have found probable cause to believe that any evidence of Erica Robinson's drug transactions would be found inside 1933 Morgan Creek Drive. It follows, then, according to the Defendant, that because the Government failed to establish probable cause that such evidence could be found in Morgan Sr.'s home, the issuance of the Warrant violated the Fourth Amendment and any fruits of the search must be suppressed. The Government disagrees and asserts that the Defendant reads the Warrant and probable cause finding too narrowly. Given the factual basis set forth in SA Skender's affidavit, the Government asserts that the Magistrate Judge properly concluded that there was probable cause to issue the search warrant and, in any event, the good faith exception under *United States v. Leon*, 486 U.S. 897, 927 (1984), validates the search.

The Defendant's basic premise in seeking to suppress the evidence found in Morgan's home is difficult to contest –*if* what the Government was seeking in the Application was evidence of Erica Robinson's drug transactions inside Defendant Morgan's home. Even the Government concedes as much. There is nothing in SA Skender's affidavit that provides even a whiff of probable cause to connect Erica Robinson to the home, any drug transactions at the home, any drug transactions with any residents in the home, or to the items inside the home in Attachment B – for good reason – Erica Robinson's drug trafficking was not the focus of this particular Application.

As the Government astutely points out, and the Defendant does not truly dispute, SA Skender's affidavit, as evidenced in the concluding paragraph, sought evidence of drug trafficking crimes from the Defendant's residence. What the Defendant does dispute is whether that probable cause determination was somehow tied to him, especially in light of Erica Robinson's name appearing in the warrant's description of the items to be seized, i.e. Attachment B.

"But probable cause for a search warrant need not be tied to any particular person." *United States v. Gibson,* 2021 WL 1705596, at *5 (7th Cir. Apr. 30, 2021) (citing *Gates*, 462 U.S. at 238 (requiring "a fair probability that contraband or evidence of a crime will be found *in a particular place*"). SA Skender's affidavit (and the inferences the Magistrate Judge is permitted to draw from the affidavit)[6] tied the Defendant and his residence to three controlled buys. Properly executed controlled buys are generally "a reliable indicator as to the presence of illegal drug activity." *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006); *see also United States v. Bacon*, 991 F.3d at 839 (7th Cir. 2021) ("[C]ontrolled buys ordinarily go a long way toward establishing

---

[6] "[I]ssuing judges may draw reasonable inferences about where evidence is likely to be found based on the nature of the evidence and the offense." *United States v. Zamudio*, 909 F.3d 172, 175 (7th Cir. 2018).

8

probable cause."). Here, the affidavit described three controlled buys in detail, including the arrangement of the buys, the execution of the buys, and all the various individuals' movements before, during, and after the buys. That information provided a sufficient link to 1933 Morgan Creek Drive to justify its search for narcotics trafficking under the *Gates* standard. *Gates,* 462 U.S. at 238-39 (the affidavit must be evaluated in light of the totality of the circumstances and the judge is to "[m]ake a practical common sense decision whether given all the circumstances set forth in the affidavit … there is a fair probability that contraband or evidence of a crime will be found in a particular place."). Thus, the probable cause finding made by the Magistrate Judge that evidence of narcotics trafficking may be found at the Defendant's residence was amply and undoubtedly supported by the information in the affidavit and this Court has no reason to call into question that determination.  Indeed, the Supreme Court has "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Gates,* 462 U.S. at 236. Thus, a Magistrate Judge's finding of probable cause "carries a strong presumption of correctness." *United States v. Sanchez-Jara*, 889 F.3d 418, 421 (7th Cir. 2018). That finding was correct here.

As for the warrant itself, just last week, the Seventh Circuit reiterated that "[a] valid search warrant 'require[s] only three things': (1) an independent magistrate issuing it; (2) a showing of probable cause 'that the evidence sought will aid in a particular apprehension or conviction for a particular offense'; and (3) a particular description of 'the things to be seized, as well as the place to be searched.'" *Gibson,* 2021 WL 1705596, at *5 (citing *Dalia v. United States*, 441 U.S. 238, 255 (1979) (internal quotations and citations omitted)). "Substance matters more than form in this context." *Id.*

Defendant makes a number of arguments directed at the third requirement above, the most salient of which is his assertion that the Warrant does not cross reference or refer to SA Skender's affidavit so as to meet the particularity requirement. He cites to *United States v. Jones,* 54 F.3d 1285 (7th Cir. 1995), for the proposition that for a search warrant to meet the particularity requirements of the Fourth Amendment the affidavit must be properly incorporated by reference into the search warrant. The Defendant then asserts that, in the absence of proper incorporation, the Warrant lacked the required particularity for the officers to ascertain the items sought in the search thereby making the Warrant a "general warrant," violative of the Fourth Amendment.

By its terms, the Fourth Amendment requires particularity in the warrant, not in the supporting documents. *See United States v. Stefanek*, 179 F.3d 1030, 1033 (7th Cir. 1999) ("The Fourth Amendment requires that the *warrant* particularly describe the things to be seized, not the papers presented to the [issuing judge]") (emphasis in original)). This requirement is intended not only to ensure that the issuing judge is in fact aware of the particularities of the search, but also "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search. *Groh v. Ramirez*, 540 U.S. 551, 561 (2004). The particulars of the application documents may be cross-referenced by the warrant, however, so long as "the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Id.*, at 557–58.

There are two dimensions to the particularity requirement. *See Dalia*, 441 U.S. at 255. First, the warrant must particularly describe the place, person, or thing to be searched. *See id.* at 255–57. Second, the warrant must particularly describe the evidence or items to be seized. *Id.*; *accord United States v. Grubbs*, 547 U.S. 90, 97 (2006) (stating that the Fourth Amendment "does not set forth some general 'particularity requirement.' It specifies only two

matters that must be 'particularly describ[ed]' in the warrant: 'the place to be searched' and 'the persons or things to be seized'" (alteration in original)). Thus, the standard is whether the warrant describes with particularity what is to be searched, which depends on the case and types of items involved. *See United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999). An affidavit may provide the necessary particularity for a warrant if it is incorporated into the warrant, attached to the warrant, or present at the search. *Rickert v. Sweeney*, 813 F.2d 907, 909 (8th Cir. 1987).

In this case, the Warrant contained incorporating language related to the affidavit as follows: "I find that the affidavit(s), or any recorded testimony establish probable cause to search and seize the person or property described above, and that the search will reveal … SEE ATTACHMENT B."[7] Additionally, the Warrant referenced ATTACHMENT A as the property to be searched and its location. Both Attachments A and B were part of and served with the Warrant and expressly referenced in the Warrant. The affidavit, while referenced, was not appended to the Warrant. However, the affidavit, from which the Magistrate Judge concluded probable cause existed, incorporates and references both Attachments A and B.

The Defendant cites to *Jones*, decided nearly a decade before *Groh*, but it is unclear to the Court how that case aids his cause here in light of the express incorporation of attachments A and B in the Warrant and their accompaniment with the Warrant, which *Groh* advocates. Even in *Jones,* the Seventh Circuit ultimately upheld the warrant without the affidavit appended to the warrant

---

[7] The Supreme Court in *Groh* was analyzing the search warrant's failure to meet the *particularity* requirement, not, the *probable cause* requirement, of the Fourth Amendment. *See Groh,* 540 U.S. at 557–58. The Court's description of the probable cause finding in the search warrant in *Groh* is strikingly similar to that contained in the Warrant here. *See id.* at 555 (noting that the search warrant "recite[d] that the Magistrate was satisfied the affidavit established probable cause to believe that contraband was concealed on the premises, and that sufficient grounds existed for the warrant's issuance"). In that respect, the Supreme Court found that the *Groh* search warrant "was based on probable cause and supported by a sworn affidavit [.]" *Id.* at 557. In other words, the fact that the affidavit was not incorporated in and/or attached to the search warrant did not affect the sufficiency of the probable cause finding, only the sufficiency of the warrant's particularity.

noting "that an artificial rigidity in this area would not be compatible with the purpose of the particularity requirement." *Jones,* 54 F.3d at 1291. In *Groh*, the Supreme Court found the warrant violative of the particularity requirement because the warrant stated only a description of the house to be searched and did not contain a description of any items to be seized, and did not expressly incorporate the more detailed application document. 540 U.S. at 554–55. *"*In other words, the warrant did not describe the items to be seized at all." *Id.* at 558. Unike the warrant in *Groh,* the Warrant here cross-references and attaches Attachment B (from the affidavit) that contains 4 pages of items to be seized.

From here it is not a stretch for the Court to conclude that Attachment B adequately described the objects of the search. "Although the fourth amendment requires that a search warrant describe the objects of the search with reasonable specificity, it need not be elaborately detailed." *United States v. Somers,* 950 F.2d 1279, 1285 (7th Cir.1991). "The level of specificity must be such ... that the officers executing the warrant are 'able to identify the things to be seized with reasonable certainty.'" *United States v. Sleet,* 54 F.3d 303, 307 n. 1 (7th Cir.1995) (quoting *United States v. Spears,* 965 F.2d 262, 277 (7th Cir. 1992), but "exact precision in a search warrant's description" is not required. *United States v. Kelly*, 772 F.3d 1072, 1081 (7th Cir. 2014). Accordingly, "the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Id.* The particularity requirement is thus satisfied when "the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended," *Steele v. United States*, 267 U.S. 498, 503 (1925), and when the warrant "describe[s] the items to be seized." *See Groh,* 540 U.S. at 558.

Attachment B clearly satisfied the above standard, even with the typographical error and inclusion of Erica Robinson's name. Officers executing the Warrant could glean from Attachment

B precisely the type of items to which the Warrant applied – the opening paragraph of Attachment B gave it away. That paragraph authorized a search for "controlled substances, to include methamphetamine, cocaine, crack cocaine, heroin, fentanyl, and marijuana; firearms, ammunition, magazines, weighing scales, and U.S. Currency." (ECF No. 109-1 at 4). The remainder of the attachment elaborated on the items to be searched for and seized. And, regardless of the presence or absence of Erica Robinson's name in the concluding paragraph of Attachment B, the scope of the search remained the same. Officers were authorized to search for evidence of drug trafficking in the residence and the specific items detailed in the attachment. It belies common sense to believe that the officers were constrained in their search to only drug trafficking items they could identify as belonging to or labeled with Erica Robinson's name on them because her name appeared in the attachment.

But, if application of "practical common sense," *Gates,* 461 U.S. at 238, in this context is insufficient for the Court's conclusions above, the holding in *United States v. Spradling*, No. 4:19-CR-12-TRM-CHS, 2020 WL 6864540, at *1 (E.D. Tenn. May 22, 2020), *report and recommendation adopted*, No. 4:19-CR-12, 2020 WL 5203593 (E.D. Tenn. Sept. 1, 2020), further guides its reasoning. In that case, the defendant was arrested on felon in possession charges following a search of his residence. An ATF special agent prepared and attested to the veracity of the affidavit at issue stating that the place to be searched was the defendant's residence which he specifically identified as being "located at 16 Forest Ridge Lane, Apartment 2, Fayetteville, Tennessee." This same residence was identified 6 more times in the affidavit. Like the present case, the warrant had affixed to it two attachments, A and B. Like here, attachment A set forth the residence to be searched and lists the same address as the affidavit. Attachment B is a list of the incriminating items expected to be found in Defendant's residence, Paragraph 2 of that attachment

13

mistakenly refers to "photographs, videotapes, slides, and other visual depictions of the occupants and owner(s) of *307 Robertson Street*, Fayetteville, TN, illegally possessing firearms." Like here, the Defendant sought to suppress the search.

In upholding the warrant, the Court noted that "this mistake appears only once and is clearly a clerical error given the many references to '16 Forest Ridge Lane' elsewhere" and "the error in Attachment B would not have prevented an officer from ascertaining and identifying the correct place to be searched." *Spradling*, 2020 WL 6864540, at *6. See also, *Kelly,* 772 F.3d at 1081 (upholding a warrant where it mistakenly described the place to be searched as the upper apartment and no such apartment existed); *United States v. Abdalla*, 327 F. Supp. 3d 1079, 1087 (M.D. Tenn. 2018) (upholding a warrant listing the wrong address and concluding that despite the error, there was no reasonable probability that the officers would search the wrong house given the description of the house contained elsewhere in the warrant).

*Spradling*'s reasoning applies equally here. The inclusion of Erica Robinson's name in the attachment is clearly a clerical error as it occurs only once and, as counsel points out, is nowhere to be found in the Application which repeatedly references the Defendant and his son. The Warrant, which this Court has already concluded was supported by probable cause, authorized officers to search for and seize nearly any known drug trafficking tool in the residence; they were not required to find Erica Robinson's name on it to seize it and the mistaken inclusion of her name did not limit the scope of the search. "[T]he 'manifest purpose' of the [particularity] requirement is to prevent 'the wide-ranging exploratory searches' that the framers faced and to limit each search 'to the specific areas and things for which there is probable cause.'" *Kelly*, 772 F.3d at 1081 (quoting *Garrison*, 480 U.S. at 84). Simply put, the Government's mistake in including Erica Robinson's name (where it should have been the Defendant's name), while unfortunate because it

14

led to this litigation, did not alter the scope of the Warrant or the scope of the items the officers were searching for, just as the incorrect address in *Spradling* did not prevent officers from searching the correct residence. Accordingly, the Court finds that the search did not run afoul the Fourth Amendment.[8]

In sum and for the reasons stated, the Court concludes that the probable cause determination of the Magistrate Judge was correct, the Warrant described the items to be seized with particularity, and that the error in Attachment B would not have prevented an officer from ascertaining and identifying the correct items to be seized. The Defendant's motion to suppress (ECF No. 109) is, therefore, DENIED.

## CONCLUSION

Based on the foregoing, the Defendant's Motion to Suppress (ECF No. 109) is DENIED. The Court CONFIRMS the final pretrial conference date of July 20, 2021 at 1:30 pm and the trial date of August 2, 2021 at 1:30 pm.  The deadline to file any plea agreement or pretrial motions or a motion to continue trial-related deadlines is July 13, 2021.

SO ORDERED this 6th day of May, 2021.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

---

[8] The Government asserts that even if the Court did find a Fourth Amendment violation, the violation would only "relate to the search of any electronic devices seized from the Morgan Creek Drive residence." (ECF No. 113 at 21). Because the Court upholds the Warrant and the search pursuant to it, it need not reach this issue.  Likewise, because the Court upholds the Warrant, it need not express any opinion as to whether the good faith exception to the exclusionary rule under *Leon* applies. *Leon,* 468 U.S. 897.